IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jenny LaBash, Carissa Gillespie, Nicole O'Connor, and Danielle English, <br><br> Plaintiffs, <br><br> v. <br><br> Proviso Township High Schools District 209 and James L. Henderson, Superintendent <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Jury Demanded |

# COMPLAINT

## Introduction

1. In violation of 42 U.S.C. § 1983, the Defendants Proviso Township High Schools District 209 ("District 209") and Superintendent James Henderson have carried out a policy or practice of punishing the Plaintiff teachers for both speech and association rights protected by the First Amendment. Since the end of a two-week strike by District 209 teachers in March 2022, Defendants have unlawfully suspended, discharged, or threatened discharge of the four Plaintiff teachers for repeated public criticism of the serious administrative failings of Defendants.

2. All four Plaintiffs have criticized Defendants for these failings at public meetings of the Defendants' Board of Education ("Board") and at special town hall meetings conducted by dissident members of the Board of Education. These failings include serious classroom overcrowding, teacher shortages, lack of bus transportation for students, and financial mismanagement—all public concerns raised not only by Plaintiff teachers in these public meetings and town halls, but also parents, students, elected officials, and newspaper editorials. At the public meeting of the Defendants' Board on November 15, 2022, Defendants sought initially to discharge

1

Plaintiffs Gillespie and O'Connor for such speech and political activity. After that action was tabled, Defendant Henderson suspended them both for 20 days on the preposterous charge that, because of such speech and activity, the presence of the two Plaintiffs in the classroom was detrimental to the well-being of the students. Defendants falsely alleged, as a pretext, without evidence, that Plaintiffs Gillespie and O'Connor had pressed their students to write and distribute handbills critical of Defendants, when the students acted on their own, in dismay if not disgust at the mismanagement of District 209. Using the same false charge, and threat of discharge, Defendants coerced Plaintiff English into resigning on November 15, 2022, and constructively discharged her before her actual discharge could be approved.

3. Defendants did fire Plaintiff LaBash, who spoke at the same Board meeting of November 15, 2022, in support of colleague Plaintiffs. Plaintiff LaBash spoke at approximately 11:00 p.m. after members of the Board of Education of the Defendant District 209 kept parents, elected officials, and other community members waiting for hours while the members of the Board enjoyed a catered dinner. Those in attendance and waiting to speak had come to protest the anticipated firings of Plaintiffs Gillespie, O'Connor, and English. When late in the evening, at 11 p.m., Plaintiff LaBash, who is white, finally had the opportunity to speak and to protest the actions against the other Plaintiffs, who are black, the Board Chair falsely accused her of racial intent in her criticism of Defendant Henderson. Then, having caused an uproar by such an attack against Plaintiff LaBash, the Board chair abruptly stopped the meeting before others could speak. On December 13, 2022, Defendants discharged Plaintiff LaBash on the same false charge of speaking with racial intent and for disrupting the hearing that the Board chair herself had thrown into chaos.

4. Defendants seek the reinstatement of Plaintiffs English and LaBash, the expungement of the suspensions of Plaintiffs O'Connor and Gillespie, and prospective injunctive

relief to bar the Defendants from continuing to punish and take reprisals against Plaintiffs for exercise of their First Amendment rights. Plaintiffs also seek damages for the deprivation of their right under the First Amendment to speak out about conditions in District 209.

## Parties

5. Plaintiff LaBash is a citizen of Illinois and resides in this judicial district.

6. Plaintiff Gillespie is a citizen of Illinois and resides in this judicial district.

7. Plaintiff O'Connor is a citizen of Illinois and resides in this judicial district.

8. Plaintiff English is a citizen of Illinois and resides in this judicial district.

9. Defendant Proviso Township High Schools District 209 ("Proviso" or "District 209") is a school district in the State of Illinois, with its principal office in Forest Park, Illinois.

10. Defendant Henderson is Superintendent of District 209 and is sued here both in his official and personal capacity.

## Jurisdiction

11. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

## Facts

12. Plaintiffs LaBash, Gillespie, O'Connor and English are or were tenured teachers in District 209.

13. All Plaintiffs were excellent teachers with no record of discipline until the unlawful reprisals taken by Defendants as described below.

14. Plaintiffs are active members of the Proviso Teachers Union, which is a council in Local 571 of the Illinois Federation of Teachers.

15. Three of the Plaintiffs, LaBash, Gillespie, and O'Connor, have held positions as union representatives of the Proviso Teachers Union.

16. In February 2022, the Proviso Teachers Union engaged in a strike at District 209, in protest of teacher shortages, class size, and other working conditions for which Defendant Henderson was to blame.

17. Defendant Henderson had been recently hired by the Board of Education of District 209 ("Board").

18. Defendant Henderson had engaged in questionable financial activities in his most recent position as superintendent of a school district in Mississippi.

19. As a result of an audit while he was superintendent in Mississippi, Defendant Henderson has been required to pay back to $90,677 in funds that he improperly took for himself.

20. Despite these questions about his financial honesty, the Defendant District 209 hired Defendant Henderson as superintendent.

21. Defendant Henderson treated the women teachers in District 209 in a disparate and demeaning manner, including the Plaintiff teachers, compared to his treatment of teachers who are men.

22. Defendant Henderson, who is black, also expressed anger with women teachers who were white, complaining of white teachers who had what he ambiguously describes as a "white agenda."

23. The Plaintiff teachers have taken a visible public role in speaking out repeatedly against the failings of Defendant Henderson and the conditions in District 209.

24. All the Plaintiffs have engaged together in speaking against Defendants at public meetings of the Board and at public town halls held by dissident Board members.

25. Plaintiffs have had strong support from elected officials, parents, students, and other citizens in District 209, and Plaintiffs have acted in concert with them and each other in seeking to improve conditions in District 209.

26. In their roles as members of the Proviso Teachers Union, Plaintiffs have also been active and outspoken in protesting especially the classroom overcrowding and teacher shortage.

27. During the strike conducted in March 2022, the students of the Proviso Township schools made handbills in support of Plaintiffs and other teachers as well as the goals of the strike and distributed the handbills in the school.

28. Plaintiffs have never sought to encourage students to do so, and students have spoken out against Defendants because they suffer the most from Defendants' mismanagement.

29. Following the strike in March 2022, Defendant Henderson began engaging in reprisals against Plaintiffs for speaking out at public meetings and town halls.

30. Plaintiff Gillespie was a special target of Defendants for political activities as a citizen outside of the classroom.

31. Since the end of the strike, Plaintiff Gillespie has been active in forming a candidate slate to challenge and replace Board of Education incumbents in the upcoming school board election in District 209 on April 4, 2023.

32. Because of such work on behalf of a candidate slate, Defendants removed Plaintiff Gillespie from her paid summer school teaching position, which she held for 18 years.

33. In a similar reprisal, on July 22, 2022, Defendants removed Plaintiff O'Connor as a student counselor, a position she had held for 12 years.

34. Defendants now assigned Plaintiff O'Connor to Proviso East to teach business education, which she had not taught for 13 years, with insufficient time for her to prepare in an appropriate way.

35. By virtue of this new assignment, Defendants were able to transfer Plaintiff O'Connor out of the Proviso West building where she had served as an on-site union representative defending union members.

36. Defendant Henderson also moved against Plaintiff LaBash, another union representative and outspoken teacher at public meetings.

37. In September 2022, Plaintiff LaBash had emailed parents of special education students in her freshman class to make sure that District 209 officials completed the Individual Education Plans ("IEPs") for her students, as federal law requires.

38. In failing to complete the IEPs, Defendants were in violation of Section 504 of the Rehabilitation Act of 1973.

39. Because Plaintiff LaBash had emailed the parents to alert them to the potential violation of law and harm to their children, Defendant Henderson suspended Plaintiff LaBash for 3 days, without even officially notifying her of the discipline.

40. Defendant District 209 and Defendant Henderson were engaged in other serious administrative failings and were unprepared for the opening of the school year in September.

41. Defendants did not have full class assignments for many of the students, while classrooms remained seriously overcrowded, with class sizes of over 50 students in some instances.

42. Local newspapers and elected officials, as well as the parents, criticized the Board and Defendant Henderson for what they described as chaos and mismanagement.

43. Some students spoke up as well and made handbills that were critical of Defendants and in support of the teachers, including Plaintiffs.

44. Those students distributed the handbills to their peers and in some cases posted them on classroom boards which had always been open to students for their own announcements, postings and communications to each other.

45. Examples of statements made on these handbills include the following:

> "Register to Vote!! Let your voice be heard election day: April 4, 2023 Vote!!!"
>
> "Fund our school! Fund our District! Use district $ on the district."
>
> "We Stand With 209 Teachers."

46. On the premise that the teachers must have pressed the students to make these handbills, and the students did not speak out in criticism of Defendants on their own, Defendant Henderson began an investigation of the Plaintiffs.

47. Defendant Henderson also directed the Human Relations officer responsible for teacher discipline to interrogate some of the students who distributed the handbills and to press them to implicate their teachers.

48. While students refused to cooperate and denied any involvement of the teachers, Defendants purported to have a statement signed by a student describing some type of involvement by the teachers, though Defendants have yet to produce such a statement.

49. Plaintiffs never had any involvement with the students in this regard, and Defendants have produced no valid evidence to the contrary.

50. Defendants began interviews of Plaintiff teachers in connection with the student handbills with the intent of discharging Plaintiffs.

51. The legal counsel of Defendants, William Gleason, participated in and helped to conduct the interviews.

52. Defendants claimed to have photographs that, according to Defendants, showed handbills posted on boards in the classrooms of the Plaintiffs Gillespie, O'Connor, and English.

53. Defendants did not even claim to have such photographs or evidence for Plaintiff LaBash and did not pursue an investigation of her with respect to the posting or distribution of handbills.

54. Plaintiffs Gillespie and O'Connor pointed out the photographs that Defendants claimed to show student handbills on the boards of their classrooms were not in fact the classrooms of either Plaintiff Gillespie or Plaintiff O'Connor.

55. Even the legal counsel of Defendants acknowledged that the photographs on examination were not of Plaintiffs' classrooms.

56. However, Defendants stated that staff members or others had found such handbills in the classrooms of Plaintiffs and that only Plaintiffs Gillespie and O'Connor had exclusive access to their classrooms.

57. Plaintiffs Gillespie and O'Connor pointed out that if such others had found the handbills, then Plaintiffs obviously did not have exclusive access to the classrooms.

58. There were handbills on boards in classrooms of several other teachers as well.

59. However, there was no discipline of other teachers with handbills in their classrooms.

60. However, Defendants investigated and sought discharge only of Plaintiffs Gillespie, O'Connor, and English, because Plaintiffs were outspoken critics of Defendants, while the other teachers were not.

61. Defendants have no regulation prohibiting use of the boards for legitimate public speech or that referred to or prohibited the posting of these student handbills.

62. Without evidence, Defendants issued findings, or bills of particulars, and sought discharges for Plaintiffs Gillespie, O'Connor, and English, respectively, and set these for approval by the Board at its public meeting on November 15, 2022.

63. The meeting at which Plaintiffs were to be discharged was scheduled to start at 7:30 p.m.

64. The hearing room was standing room only with over a hundred parents and citizens who had come to protest the discharges.

65. The mayors of Forest Park and Broadview, and Bellwood, also came to protest the actions of Defendants.

66. Plaintiff LaBash was also there to protest the anticipated firings of the other three Plaintiffs.

67. However, at 7:30 p.m. the Board members did not appear, and chose to enjoy a catered meal while the public that came to protest the firings waited for hours for the meeting to start.

68. After the catered meal, the Defendants still did not appear but went into closed executive session to fire the Plaintiffs.

69. Defendants first accepted the coerced resignation of Plaintiff English, who was allowed to resign before the Board could vote to discharge her.

70. Then Defendants turned to the cases of Plaintiffs Gillespie and O'Connor who had refused to resign.

9

71. Referring to Plaintiff Gillespie's role in the upcoming school board election, District 209 Board member Rodney Alexander said to her: "We know what you have been up to."

72. Defendants' counsel Gleason then interrupted Alexander and told him not to discuss the upcoming election.

73. Plaintiffs Gillespie and O'Connor then spoke to the Board members and disproved specific items in the bill of particulars for their terminations.

74. Defendant Henderson had expected routine approval of the discharges, but some Board members now hesitated because of the lack of any evidence that Plaintiffs had been involved with the handbills.

75. At the end of the executive session, a slim majority of Board members now voted to temporarily table the proposed discharges of Plaintiffs Gillespie and O'Connor.

76. Defendant Henderson—frustrated in obtaining their immediate discharges—then by his own authority suspended Plaintiffs O'Connor and Gillespie for 20 days.

77. Such suspensions of 20 days without pay did not require approval of the Board.

78. In later suspending Plaintiffs, Defendant Henderson invoked a District 209 policy that allowed such suspensions for teachers when he deemed their actions detrimental to the District.

79. The Board, near or at 11 p.m., ended the executive session with Plaintiffs O'Connor and Gillespie and proceeded into the public part of the meeting.

80. After hours of waiting, the mayors and many parents and students were still prepared to speak to protest the anticipated discharges of the Plaintiffs.

81. Students also spoke, denying that the teachers had pressed them to criticize Defendants, and stating that on their own they had made and distributed handbills for which the Plaintiffs were being punished.

82. One student said that she had obtained the materials from her father, who had paid for the materials and helped the students to make the handbills, and her father then stood up and waved.

83. Plaintiff LaBash now spoke, at this late hour, and began by citing the names of Plaintiffs Gillespie, O'Connor, and English, adding "I just wanted to say their names."

84. Then Plaintiff LaBash questioned the expenses up for approval, and said, "I'm wondering about paying for Jimmy's trip back home."

85. Plaintiff was referring indirectly to improper reimbursements of Defendant Henderson while in Mississippi, where he and other school officials were ordered to repay over $200,000 in sums they had taken, with Henderson alone responsible for repaying over $90,677 in funds.

86. Addressing Plaintiff LaBash in demeaning terms as "Ma'am," the Board Chair Patterson told Plaintiff LaBash that this was "name calling, his name is…"

87. Plaintiff replied that she was not "name calling," and continuing to question the misuse of funds, she said that her own father and his own family came from the projects just as Cedric Lewis, the chief financial officer, did, but that Lewis "can't seem to do math…"

88. The Board Chair Patterson shouted her down, saying "that's racist, that's racist, that's racist…"

89. Plaintiff had no racial intent in referring to Defendant Henderson as "Jimmy," a common nickname for "James," and was identifying with others who like her own father grew up in the projects.

90. Far from acting with racial intent, Plaintiff who is white was speaking on behalf of the other three Plaintiffs, all of whom are black.

91. Many in the audience took the side of Plaintiff LaBash and challenged the accusation of the Board Chair, crying out: "That's wrong, that's wrong."

92. The Board Chair then ordered that security remove LaBash forcibly from the meeting and gaveled to a close the meeting before the others in attendance could speak.

93. As the hearing ended, many began to chant at the Board members, "Do your job, do your job."

94. On November 22, 2022, the Forest Park Review in an editorial expressed the community's disgust:

> There is nothing normal going on in Proviso Township High School leadership — administration or school board. Scheduled school board meetings should not start hours late because the school board is enjoying a catered dinner, certainly not while nearly 100 citizens — parents, students and teachers — have gathered to sound off on deteriorating conditions.

95. On December 13, 2022, Defendants fired Plaintiff LaBash for speaking with racial intent in criticizing the Defendants and for disrupting a public meeting.

96. After the meeting of November 15, 2022, Plaintiffs Gillespie and O'Connor immediately served out their 20-day suspensions without pay.

97. However, since their return to teaching, Defendants have continued to issue warnings and reprimands with respect to both Plaintiffs Gillespie and O'Connor, with the goal of forcing them from their employment for their outspoken speech.

12

## Claims

### Count I: Deprivation of Rights Under the First Amendment

98. By the acts set out above, and in violation of 42 U.S.C. § 1983, Defendants have engaged in a policy or practice of depriving these four Plaintiffs at various times of their rights under the First Amendment to speak and associate without reprisal.

99. By the acts set forth above, Defendants have suspended or terminated Plaintiffs' employment, either by direct or constructive discharge, for supporting the Proviso Teachers Union and for speaking out against the administrative failings of the Defendants.

100. Such speech and speech-related activities address issues of widespread public concern, including overcrowded classrooms, teacher shortages, failures to have full class schedules, and other issues, including bus transportation.

101. In the case of Plaintiff LaBash, even when such speech is harsh or unpleasant, it is protected under the First Amendment, when speaking as a private citizen in a public forum.

102. Nor does such speech of Plaintiffs interfere with the efficiency of the operations of Defendants, especially when Plaintiffs all had records as excellent teachers, and do not work with or have contact with the Defendant Henderson or Board members on a day-to-day basis.

103. By the acts set forth above, Defendants have also unlawfully deprived Plaintiffs of their First Amendment rights to act in concert with each other and members of the Proviso Teachers Union.

104. By the acts set forth above, Defendants have further deprived Plaintiffs of their First Amendment rights by suspending or discharging them to carry out a policy to deprive the students of their own First Amendment rights to speak and to make common cause with their teachers.

105. Unless restrained by this Court, and without reinstatement and other preliminary and permanent injunctive relief, Defendants will continue to carry out a policy and practice of

harassing and disciplining Plaintiffs O'Connor and Gillespie until they resign and further retaliating against Plaintiffs English and LaBash if they are reinstated.

106. By the acts set forth above, the Defendants have inflicted and continue to inflict irreparable injury upon the Plaintiffs for exercise of their First Amendment rights and have no adequate remedy at law.

WHEREFORE, Plaintiffs pray this Court to:

    a. Declare that by the acts set forth above, and as further set out in Count I, and in violation of 42 U.S.C. § 1983, the Defendants have engaged in a policy and practice of depriving all the Plaintiffs of their First Amendment rights.

    b. Order that Defendants reinstate Plaintiffs LaBash and English to their employment at District 209 on a preliminary and permanent basis for the continuing deprivation of their First Amendment rights.

    c. Order that Defendants expunge disciplinary suspensions and other discipline of Plaintiffs O'Connor and Gillespie.

    d. Grant damages to Plaintiffs for loss of income and other damages compensatory in nature.

    e. Enjoin Defendants on a preliminary and permanent basis from further engaging in a policy or practice to deprive Plaintiffs of their First Amendment rights.

    f. Grant Plaintiffs their legal fees and such other relief as may be appropriate.

Respectfully submitted,

Dated: March 6, 2023

By: /s/ *Thomas H. Geoghegan*
One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Will W. Bloom
Despres, Schwartz, & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511